# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **LAW OFFICES OF BRUCE J. CHASAN, LLC,** *et al.* | : | **CIVIL ACTION** |
| *Plaintiffs* | : | **NO. 23-0648** |
| | : | |
| v. | : | |
| | : | |
| **JOHN M. PIERCE, ESQ.,** *et al.* | : | |
| *Defendants* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                         MARCH 27, 2024

## MEMORANDUM OPINION

**INTRODUTCION**

      This action is an attorney's fourth attempt to recover contingency fees and associated damages from an out-of-state attorney who, after agreeing to serve as co-counsel and fund the litigation, kept the client for whom Plaintiff had filed a federal "right to publicity" action.

      Specifically, Plaintiffs[1] filed this civil action against numerous Defendants[2] premised on Plaintiffs' alleged business relationship with Defendants arising from the legal representation of client Lenwood Hamilton ("Hamilton"). In the 124-page complaint, Plaintiffs seek equitable relief in the form of a decree vacating judgments entered in two prior federal actions,[3] based on allegation of "after-discovered" fraud perpetrated on Plaintiffs by Defendants. Plaintiffs also seek to enforce an alleged settlement agreement with Defendants and to assert claims for tortious

---

[1]     Attorney Bruce J. Chasan, ("Plaintiff Chasan"), and The Law Office of Bruce J. Chasan, LLC, ("Plaintiff Chasan Law") (collectively, "Plaintiffs"). Plaintiffs are citizens of Pennsylvania.

[2]     John M. Pierce, ("Defendant Pierce"), James D. Bainbridge, ("Defendant Bainbridge"), Pierce Bainbridge Beck Price & Hecht, LLP, ("Defendant PBBPH"), Bainbridge Law APC, Pierce Bainbridge P.C., and John Pierce Law, P.C., (collectively, "Defendants"). Defendants are non-citizens of Pennsylvania.

[3]     *Law Offices of Bruce J. Chasan, LLC, et al. v. Pierce Bainbridge Beck Price & Hecht, LLP, et al.*, No. 18-cv-5399-AB [hereinafter *Chasan I*] and *Law Offices of Bruce J. Chasan, LLC, et al. v. Pierce Bainbridge Beck Price & Hecht, LLP, et al.*, No. 20-cv-1338-AB [hereinafter *Chasan II*].

interference with contractual relations, fraud, civil conspiracy, concerted action, and aiding and abetting fraud. (ECF 1).

Before the Court is Defendants' motion to dismiss filed pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6), wherein Defendants argue that Plaintiffs' claims are precluded under the doctrines of impermissible collateral attack, claim preclusion, and/or issue preclusion. (ECF 12-1). Plaintiffs oppose Defendants' motion. (ECF 15). The issues presented are fully briefed and are ripe for disposition.[4] For the reasons set forth herein, Defendants' motion to dismiss is granted.

## BACKGROUND[5]

Because this matter involves several cases, a brief summary of each case is needed.

### *Hamilton Litigation*

On January 11, 2017, Plaintiff Chasan filed a civil action on behalf of Hamilton against Lester Speight, Epic Games, Microsoft, Microsoft Studios, and The Coalition asserting that the

---

[4]   This Court has also considered Defendants' reply and Plaintiffs' sur-reply. (ECF 18, 23).

[5]   The procedural history and underlying facts are gleaned from Plaintiffs' complaint, (ECF 1), Defendants' motion to dismiss, (ECF 12), Plaintiffs' response in opposition, (ECF 15), Defendants' reply, (ECF 18), Defendants' sur-reply, (ECF 23), and the official record (docket).

In addition, Plaintiffs have asked the Court to take judicial notice of various filings, judgments, orders, and mandates from the two cases in which Plaintiffs seek to vacate judgments. (ECF 12-2). Pursuant to Rule 201(c), a court "must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c). Judicial notice can be taken at any stage of a case. Fed. R. Evid. 201(d). Matters of public record or facts that can be accurately and readily determined to be accurate may be judicially noticed. *See* Fed. R. Evid. 201(b); *City of Pittsburgh v. West Penn Power Co.*, 147 F.3d 256, 259 (3d Cir. 1998); *see also Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) ("[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."). Here, Defendants attached as exhibits to the motion to dismiss the following documents: the complaints, the Rule 60(b) motion, and the district and appellate court judgments from *Chasan I* and *Chasan II*. Defendants represent that these documents are true and correct copies. Thus, pursuant to Rule 201, this Court has taken judicial notice of the documents attached to Defendants' motion identified at Exhibits 1-1, (ECF 12), and reply at Exhibits 11-15, (ECF 18). This Court has also taken judicial notice of the docket entries in those two cases.

defendants had misappropriated his likeness and voice in a video game series. *See Hamilton v. Speight, et al.*, No. 17-cv-0169. The matter was assigned to the Honorable Anita B. Brody. At some point in the litigation (which is further addressed in the summation of *Chasan I* litigation), the relationship between Plaintiff Chasan and Hamilton became strained when the issue of the demand amount for settlement was discussed. Plaintiff Chasan would later cease representing Hamilton and, simultaneously, Defendant Pierce, who had been brought in to finance the litigation and serve as co-counsel, entered his appearance. On September 26, 2019, the court therein granted defendants' motion for summary judgment. *Hamilton v. Speight, et al.*, 413 F.Supp.2d 423, 434 (E.D. Pa. 2019), *aff'd*, 827 F. App'x 238 (3d Cir. 2020). Notably, prior to the court entering judgment in the Hamilton case, Plaintiffs filed the *Chasan I* case.

### *Chasan I Litigation*

On December 14, 2018, Plaintiffs filed a two-count complaint for breach of contract and for specific performance against Defendants Pierce and PBBPH in this court, seeking to enforce a settlement agreement between the parties. *See Chasan I*, No. 18-cv-5399. The matter was also assigned to Judge Brody. Briefly, the complaint alleged that:

> Plaintiff Chasan represented Hamilton on a contingency fee agreement basis (via an Engagement Letter) wherein Hamilton, *inter alia*, agreed to pay the litigation costs incurred and Plaintiff Chasan agreed to receive his fees if Hamilton's litigation was successful. The contingency fee agreement also stipulated that if Hamilton terminated Plaintiff Chasan's professional services prior to the final adjudication of the matter, Hamilton would pay Plaintiff Chasan attorney's fees at a rate of $450 an hour for the time spent on the case. At some point during the *Hamilton* litigation, it became apparent that Hamilton was unable to pay the costs of the litigation. This difficulty prompted Plaintiff Chasan to contact various third-party litigation funds and attorneys for funding. He ultimately connected with Defendant Pierce who expressed an interest in financing the litigation and becoming involved with Hamilton's representation.
>
> During the negotiations to formalize Plaintiffs and Defendants' professional relationship with respect to the joint representation and financing of Hamilton's case, Hamilton terminated Plaintiff Chasan's services and retained Defendants Pierce and PBBPH as his lawyers.

      Plaintiff Chasan then requested Defendants pay him the attorney's fees he was owed pursuant to the engagement letter executed by Hamilton and Plaintiff Chasan.[6] When it became apparent that Defendants would not pay Plaintiffs the fees requested, Plaintiff Chasan threatened to sue Defendants to recover his attorney's fees. In response to the threat of a lawsuit, Defendants advised Plaintiff Chasan that they would file a counterclaim asserting a legal malpractice claim against him on Hamilton's behalf. To avoid the threatened litigation, the parties began negotiating and reached a settlement agreement of their disputes, (the "settlement agreement").

Despite the alleged settlement agreement reached, Defendants failed to pay Plaintiffs the agreed upon settlement amount which precipitated Plaintiffs to file *Chasan I* for breach of contract and for specific performance of the settlement agreement.

Defendants moved to dismiss *Chasan I,* arguing that the parties had not entered into any binding settlement agreement. The district court agreed, finding that though it appeared that a settlement amount had been reached on September 15, 2018, the parties continued to negotiate exchanging numerous unsigned and non-final drafts of a written settlement agreement. The court further found that "[b]ecause the negotiations never concluded and no agreement was signed, there was no 'meeting of the minds' as to the terms of and consideration involved in Chasan's alleged agreement with Defendants," and dismissed the complaint. *See Chasan I*, 2019 WL 1957950, at *4 (E.D. Pa. May 2, 2019). Plaintiffs appealed the dismissal to the United States Court of Appeals for the Third Circuit (the "Third Circuit"), and a panel therein affirmed the dismissal on November 26, 2019, holding that "it is clear from Chasan's complaint that the parties never reached a final settlement agreement," about certain material terms, including, whether Hamilton was a party to, or a third-party beneficiary of the settlement agreement. *Chasan I*, 792 F. App'x 195,199-200 (3d Cir. 2019).

---

[6]     It is unclear why Plaintiffs sought the owed attorney's fees from Defendants rather than from Hamilton, the person with whom the contingency fee agreement existed.

*Chasan II Litigation*

On March 9, 2020, Plaintiffs filed a second action against Defendants PBBPH and Pierce, and included as party defendants Bainbridge, Carolynn Beck, Maxim Price, David L. Hecht, and Privati Capital LLC. *See Chasan II*, No. 20-cv-1338. In that complaint, Plaintiffs asserted claims of tortious interference with contractual relations and unjust enrichment based on the same factual allegations in *Chasan I. See id.*; *Chasan I*, No. 18-cv-5399. Essentially, Plaintiffs alleged that Defendants tortiously interfered with the contractual relationship between Plaintiffs and Hamilton by inducing Hamilton to terminate Plaintiffs' professional services. Plaintiffs also asserted an unjust enrichment claim premised on Defendants failure to pay Plaintiffs for the legal work Plaintiff Chasan had done on behalf of Hamilton prior to Plaintiff's professional services being terminated.

*Chasan II* was also assigned to Judge Brody. Defendants moved to dismiss the complaint arguing, *inter alia*, the doctrine of claim preclusion. In dismissing the complaint by opinion dated January 15, 2021, Judge Brody wrote, *inter alia,* that:

> Although there is no single definition of cause of action when determining whether two cases involve the same cause of action for purposes of res judicata, courts take a broad view and focus on the essential similarity of the underlying events giving rise to the various legal theories. In other words, courts focus on facts rather than on legal theories. Therefore, res judicata bars any claim that arises from the same set of facts as a claim adjudicated on the merits of an earlier litigation.

*Chasan II*, 2021 WL 148406, at *5 (E.D. Pa. Jan. 15, 2021) (internal citations and quotation marks omitted). Judge Brody concluded that the claims in both *Chasan I* and *Chasan II* concern the transition in representation of Hamilton, and that though the theories of recovery are different, the claims relate to the same operative event and, thus, Plaintiff "Chasan's claims against [] Defendants are barred by the doctrine of res judicata." *Chasan II*, 2021 WL 148406, at *5-6 (E.D. Pa. Jan. 15, 2021). The claim for unjust enrichment was also dismissed because summary

judgment in the *Hamilton* litigation had been against Hamilton, and Defendants had not been enriched. *Id.* at *6. Plaintiffs did not appeal this ruling.

### *Plaintiffs' Rule 60(b) Motion in Chasan I*

In the months immediately following the decision in *Chasan II*, Hamilton allegedly called Plaintiff Chasan, who then allegedly learned, *inter alia*, that Defendants had been untruthful during the *Chasan I* settlement agreement negotiations in that: (1) the decision to terminate Plaintiff Chasan's services was made by Defendant Pierce and not by Hamilton as Defendant Pierce had originally indicated; (2) Hamilton had never authorized the threatened legal malpractice action against Plaintiff Chasan; and (3) Defendants Pierce and PBBPH never showed or asked Hamilton for his approval of the negotiated settlement agreement regarding Plaintiff Chasan's legal fees, as well as the legal malpractice suit. Relying on this new information, on April 5, 2021, nearly two years after judgment had been entered, Plaintiffs filed a Rule 60(b) motion[7] in the *Chasan I* litigation. In the Rule 60(b) motion, Plaintiffs collaterally attacked the *Chasan I* decision, arguing that based on the newly discovered evidence of fraud, the court should vacate its dismissal of *Chasan I*, reinstate their claims, and deny Defendants' motion to dismiss. (*See Chasan I* Rule 60(b) Mot., ECF 18-2, at p. 23). Although Plaintiffs styled the motion as a Rule 60(b)(6) motion,

---

[7]   Rule 60(b) provides:

> [T]he court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b). A Rule 60(b) motion premised on reasons (1), (2), or (3) must be made no more than a year after the entry of the judgment, and motions under all other reasons must be made within a reasonable time. *See* Fed. R. Civ. P. 60(c).

(the catch-all provision), Plaintiffs' arguments were premised entirely on the purported newly discovered evidence of Defendants' misrepresentations and fraud during the negotiations of the settlement agreement. As such, Judge Brody construed Plaintiffs' motion as one filed under Rule 60(b)(2) and (3) and denied the motion, as untimely. *Chasan I*, 2021 WL 4619910, at *2 (E.D. Pa. Aug. 26, 2021) ("Chasan cannot fashion the motion to fit Rule 60(b)(6), when relief is more appropriate under Rule 60(b)(2) or Rule 60(b)(3). To the extent Chasan's motion[] relies on newly discovered evidence and alleged fraud and misconduct, the motion is untimely."). On appeal, the Third Circuit affirmed the dismissal of Plaintiffs' Rule 60(b) motion, *Chasan I*, 2022 WL 17424299, at *3 (3d Cir. Dec. 6, 2022), and denied Plaintiffs' petition for an *en banc* rehearing, see *Chasan I*, No. 18-cv-5399 (3d Cir. Jan. 4, 2023).

### *This Action — Chasan III Litigation*

A few weeks after the Third Circuit dismissed Plaintiffs' Rule 60(b) appeal, on February 21, 2023, Plaintiffs filed the instant action alleging that Defendants made numerous fraudulent misrepresentations to Plaintiffs during the transition of Hamilton's representation from Plaintiffs to Defendants, principally, during the course of negotiations of the attorney's fee and legal malpractice suit disputes. As noted, here, Plaintiffs' complaint seeks to: vacate the judgments entered in *Chasan I* and *Chasan II* on the basis of fraud (Counts I and II); enforce the settlement agreement disputed in *Chasan I* (Count III); assert a tortious interference claim premised on allegations that Defendants induced Hamilton to terminate Plaintiff Chasan's professional services (Count IV); and assert claims for fraud, civil conspiracy, and aiding and abetting, based on allegations that Defendants sent a deceitful email indicating that Hamilton authorized the threaten legal malpractice lawsuit, and fraudulently misrepresented that Hamilton would not approve the alleged settlement agreement (Counts V-VIII).

7

**LEGAL STANDARD**

Rule 12(b)(6) governs motions to dismiss for failure to state a claim. Fed. R. Civ. P. 12(b)(6). When ruling on a motion to dismiss, this Court must accept as true all factual allegations in a plaintiff's operative complaint and construe the facts alleged in the light most favorable to the plaintiff. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009)). When considering a Rule 12(b)(6) motion to dismiss, courts must determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plausibility standard requires more than a "sheer possibility that a defendant has acted unlawfully." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* To survive a motion to dismiss under Rule 12(b)(6), "a plaintiff must allege facts sufficient to 'nudge [her] claims across the line from conceivable to plausible.'" *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). In addition to the complaint, "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

In the motion to dismiss, Defendants primarily argue the affirmative defenses of *res judicata* (claim preclusion) and collateral estoppel (issue preclusion). *See* Fed. R. Civ. P. 8(c). As the party arguing the affirmative defense of *res judicata*, Defendants, bear the burden of showing that it applies. *Davis v. U.S. Steel Supply, Div. of U.S. Steel Corp.*, 688 F.2d 166, 170 (3d Cir.

1982).  The same is true when arguing the affirmative defense of issue preclusion.  *Dici v. Com. of Pa.*, 91 F.3d 542, 548 (3d Cir. 1996).

**DISCUSSION**

In their motion to dismiss, Defendants specifically argue that:  (1) Plaintiffs' claims for equitable relief seeking to vacate the judgments in *Chasan I* and *Chasan II*, (Counts I and II), are impermissible collateral attacks, and (2) the remaining claims, (Counts III-VIII), are barred by the affirmative defenses of claim preclusion and issue preclusion because those claims are the same claims and/or involve the same facts and issues as those raised or that could have been raised in *Chasan I* and *Chasan II*.  Plaintiffs disagree.  Each arguments is separately addressed below.

*Counts I and II – Equitable Actions to Vacate the Judgments in Chasan I and Chasan II*

At Counts I and II of the complaint, Plaintiffs, pursuant to Rule 60(d)(1), seek an order to vacate the judgments entered against them in *Chasan I* and *Chasan II* based on assertions of newly discovered evidence of Defendants' misrepresentation and fraud.  Specifically, Plaintiffs argue that Defendants lied about, *inter alia*, (a) having Hamilton's authority to file a malpractice lawsuit against Plaintiff Chasan, and (b) Hamilton's desire to terminated Plaintiff Chasan's professional services.

Defendants move to dismiss these counts arguing this Court lacks jurisdiction to vacate another court's final judgment that has been affirmed by the Third Circuit, and that even if this Court has jurisdiction, Rule 60(d)(1) relief is not appropriate because there has been no grave miscarriage of justice.  In response, Plaintiffs contend that a collateral attack by way of Rule 60(d)(1) is permissible and appropriate given the circumstances under which he discovered the newly alleged evidence.

Rule 60(d)(1) allows a court "to entertain an independent action to relieve a party from a judgment, order, or proceeding."  Fed. R. Civ. P. 60(d)(1).  To maintain an independent action

9

under Rule 60(d)(1), a plaintiff must establish (a) a meritorious claim, (b) a lack of an alternative remedy, (c) that the judgment is unconscionable, and (d) that plaintiff has been diligent and is not at fault him or herself.  *Quarles v. Samples*, 2023 WL 2497864, at *2 (E.D. Pa. Mar. 14, 2023).  "Because a Rule 60 independent action is an equitable one . . . relief under Rule 60(d) is reserved for the rare and exceptional case where a failure to act would result in a miscarriage of justice." *Sharpe v. United States*, 2010 WL 2572636, at *2 (E.D. Pa. June 22, 2010) (citing *United States v. Beggerly*, 524 U.S. 38, 42-46 (1998)); *see also Jackson v. Danberg*, 656 F.3d 157, 166 (3d Cir. 2011) ("Rule 60(d) permits a court to entertain an independent action to relieve a party from a judgment in order to prevent a grave miscarriage of justice." (internal quotation marks omitted)).  "Whereas the burden to prevail under Rule 60(b) is a heavy one, the burden under Rule 60(d) is even heavier."  *Quarles*, 2023 WL 2497864, at *1.

        As noted, in *Chasan I*, Plaintiffs sought to enforce an alleged settlement agreement between Plaintiffs and Defendants designed to resolve a fee dispute and the threat of a legal malpractice action.  Judge Brody found that the settlement agreement did not exist; a decision affirmed by the Third Circuit.  *See Chasan I*, 2019 WL 1957950, at *5 ("Because the negotiations never concluded and no agreement was signed, there was no 'meeting of the minds' as to the terms of and consideration involved in [Plaintiff] Chasan's alleged agreement with Defendants."); *Chasan I*, 792 F. App'x at 200.  Here, Plaintiffs essentially seek to resurrect the alleged settlement agreement contract claim and arguments *now* relying on purportedly newly discovered evidence of deceit or fraud — that Defendants lied to Plaintiffs about, *inter alia*, (1) Hamilton authorizing a malpractice suit against Plaintiffs, and (2) Hamilton's disapproval of the settlement agreement.  *See Chasan I*, 2019 WL 1957950, at *5.  Notably, Plaintiffs attempted to make a similar fraud argument in their Rule 60(b) motion filed in *Chasan I*, which Judge Brody denied, as untimely filed.  *See Chasan I*, 2021 WL 4619910, at *2.

Though Plaintiffs want another bite of the proverbial apple, this allegedly newly discovered evidence of fraud does not support the *existence* of an enforceable settlement agreement as alleged in *Chasan I*.  To the contrary, this allegedly new evidence of fraud undermines the very existence of an enforceable settlement agreement and, in fact, makes any such agreement, if one existed, voidable, not enforceable.  *See Sandvik AB v. Advent Int'l Corp.*, 220 F.3d 99, 109 (3d Cir. 2000) (explaining that fraud in the inducement of a contract makes said contract voidable).  Given that the allegedly newly discovered evidence of Defendants' lies or deceit does not support the *existence* of a settlement agreement, let alone, creates an enforceable contract, Plaintiffs have not demonstrated that the underlying contract claim in this matter is meritorious.  As such, there is no support to find that a failure to act would result in a miscarriage of justice.  Accordingly, the relief sought pursuant to Rule 60(d) is not appropriate.

Plaintiffs also do not meet the high burden of demonstrating that the claims in *Chasan II* are meritorious and/or that a failure to act would result in a miscarriage of justice.  In *Chasan II*, Plaintiffs asserted tortious interference and unjust enrichment claims based on the same facts alleged in *Chasan I*.  Judge Brody therein ruled that the tortious interference claim was barred by *res judicata*.  *See Chasan II*, 2021 WL 148406, at *5 ("[T]he present action is based on the same cause of action as *Chasan I* . . . [and] res judicata bars any claim that arises from the same set of facts as a claim adjudicated on the merits in the earlier litigation." (internal quotation mars omitted)).  As to the unjust enrichment claim, Judge Brody concluded there was no unjust enrichment because the *Hamilton* litigation was unsuccessful, so Defendants obtained no benefit. *Id.* at *6.  Plaintiffs' proffered new evidence of fraud, here, does not change (a) the fact that there was no enrichment or (b) Judge Brody's *res judicata* analysis and/or conclusion with respect to Plaintiffs' tortious interference claim.  Given that the proffered new evidence does not alter the fact that the claims in *Chasan II* are barred by *res judicata* and/or the underlying claims are not

11

meritorious, relief here pursuant to Rule 60(d) is also not warranted. Under these circumstances, Defendants' motion to dismiss Plaintiffs' Rule 60(d) independent actions to vacate the judgments in *Chasan I* and *Chasan II* is granted.

### *Count III — Enforcement of Settlement Agreement*

At Count III of the complaint, Plaintiffs assert a claim for enforcement of the settlement agreement that the parties allegedly entered into to resolve the attorney's fees and legal malpractice disputes between Plaintiffs and Defendants Pierce and PBBPH. In the motion to dismiss, Defendants argue that Count III should be dismissed as barred by the doctrine of claim preclusion because this same claim was fully adjudicated in *Chasan I*.

Claim preclusion bars a claim when there has been a showing by the moving party of: "(1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action." *Duhaney v. Att'y Gen. of U. S.*, 621 F.3d 340, 347 (3d Cir. 2010). Here, all three requirements are met with respect to Plaintiffs' claim for enforcement of the alleged settlement agreement. Specifically, as to the first two requirements, in *Chasan I*, Judge Brody granted Defendants' Rule 12(b)(6) motion to dismiss Plaintiffs' settlement agreement-based claim and entered a final judgment in favor of Defendants finding that no binding agreement had been reached, s*ee Chasan I*, 2019 WL 1957950, at *4 (E.D. Pa. May 2, 2019), a decision affirmed by the Third Circuit, *see* 792 F. App'x 195 (3d Cir. 2019). Further, Defendants Pierce and PBBPH and Plaintiffs were parties to the *Chasan I* action, as they are in this action.

As to the third requirement, the identity of claims, in *Chasan I* Plaintiffs asserted a breach of contract claim and sought specific performance against Defendants Pierce and PBBPH based on the alleged settlement agreement. In the case *sub judice*, Plaintiffs seek to enforce the same alleged settlement agreement, *albeit* this time relying on the allegedly newly discovered evidence of fraud. As such, each of the requisites for a claim preclusion defense are met.

Notwithstanding, Plaintiffs argue that their contract claim is not barred by claim preclusion because of the purportedly *new* evidence of fraud and misrepresentation. Plaintiffs are mistaken. Claim preclusion "applies even where new claims are based on newly discovered evidence, unless the evidence was either fraudulently concealed or it could not have been discovered with due diligence." *Haefner v. N. Cornwall Twp.*, 40 F. App'x 656, 658 (3d Cir. 2002). Although Plaintiffs argue that the new evidence could not have been previously discovered, Plaintiffs' purported discovery of this new evidence of fraud does not and cannot alter the viability of Plaintiffs' contract claim. In *Chasan I*, the court concluded that Plaintiffs failed to allege facts sufficient to plausibly show the existence of an enforceable settlement agreement. *See Chasan I*, 2019 WL 1957950 at *4. Even accepting that Defendants made the alleged fraudulent misrepresentations to induce Plaintiffs to enter into the settlement agreement as true, as this Court must do at this stage of litigation, this newly discovered evidence does not alter the fact that a binding enforceable settlement agreement does not exist. At best, such evidence of fraud on Plaintiffs would make *any* settlement agreement voidable. *See Sandvik AB*, 220 F.3d at 109. As such, Plaintiffs' contract claim against Defendants Pierce and PBBPH in this action is barred by the claim preclusion doctrine.

Plaintiffs argue that Defendants Bainbridge, Bainbridge Law APC, Pierce Bainbridge P.C., and John Pierce Law, P.C. (the "Additional Defendants") were not defendants in *Chasan I* and, therefore, claim preclusion does not apply. Plaintiffs are mistaken. "The doctrine of res judicata applies to and is binding, not only on actual parties to the litigation, but also to those who are in privity with them." *Turner v. Crawford Square Apartments III, L.P.*, 449 F.3d 542, 549 (3d Cir. 2006) (citing *Stevenson v. Silverman*, 417 Pa. 187, 190 (1965)). Here, Defendant Bainbridge is a former member of Pierce Bainbridge Beck Price & Hecht, LLP (Defendant PBBHP), who was a party to both *Chasan I* and *Chasan II*. Bainbridge Law APC is a law firm organized by Defendant

13

Bainbridge.  Pierce Bainbridge, P.C., is a law firm and John Pierce Law, P.C. is a professional corporation organized by Defendant Pierce.  In summary, the newly added parties are either former partners of Defendant PBBHP, or as alleged in Plaintiffs' complaint, "Bainbridge Law APC, Pierce Bainbridge, P.C., and John Pierce Law, P.C. are all successors in interest to [Defendant] PBBPH Law."  (Compl., ECF 1, at ¶ 16).  Given the Additional Defendants' relationship to Defendant PBBPH, they are in privity with Defendant PBBPH.  As such, the decisions in *Chasan I* and *Chasan II* are binding on these Additional Defendants and the contract claims against them are barred by the doctrine of *res judicata*.  Furthermore, the Additional Defendants were not parties nor signatories to the alleged settlement agreement at issue.  As such, Plaintiffs cannot enforce the settlement agreement against them, as non-parties.  *See KDH Elec. Sys., Inc. v. Curtis Tech. Ltd.*, 826 F. Supp. 2d 782, 794 (E.D. Pa. 2011) ("Under Pennsylvania law, a defendant who is neither a party nor signatory to a contract cannot be held liable for breach of the contract.").  Therefore, Plaintiffs cannot assert contract claims based on the alleged settlement agreement (Count III) against any of the named Defendants.  Accordingly, Defendants' motion to dismiss Count III is granted.

*Count IV – Tortious Interference with Contractual Relations*

At Count IV of the complaint, Plaintiffs assert that Defendants tortiously interfered with Plaintiffs' contractual relation with Hamilton when:  Defendants caused Hamilton to terminate Plaintiff Chasan's professional services; and fraudulently misrepresented that Hamilton intended to file a legal malpractice action against Plaintiffs to intimidate Plaintiffs into not pursuing a civil action to recover the attorney's fees owed to them.  Defendants move to dismiss this claim on the basis that it, too, is barred by both claim and issue preclusion.

As noted above, *res judicata* precludes a plaintiff from asserting a claim when there has been: "(1) a final judgment on the merits in a prior suit involving (2) the same parties or their

privies and (3) a subsequent suit based on the same cause of action." *Duhaney*, 621 F.3d at 347. For the reasons set forth above,[8] the first two requirements are not at issue, as *Chasan I* and *Chasan II* were final judgments and the same parties or their privies were involved in those cases as are in this case. Plaintiffs argue, however, that the third requirement is not met because their current tortious interference claim is premised on different facts, including the newly discovered evidence of fraud, that did not underlie any of the contract or tortious interference claims asserted or litigated in *Chasan I* and/or *Chasan II*.

Interestingly, the paragraphs asserted under the tortious interference claim (Count IV) in the current action are nearly identical to those asserted at Count I of *Chasan II*. (*Compare* Comp., ECF 1, at ¶¶ 371-88, *with* ECF 12-12, Ex. 10 at ¶¶ 250-68). Count IV in this action incorporates by reference all allegations in the foregoing paragraphs in the complaint, (*see* Comp., ECF 1, at ¶ 371), which, notably, include allegations not asserted in *Chasan I* or *Chasan II*.

When considering whether Plaintiffs' current tortious interference claim is the same as the tortious interference claim asserted in *Chasan II*, this Court must "focus on 'whether the acts complained of [are] the same, whether the material facts alleged in each suit [are] the same, and whether the witnesses and documentation required to prove such allegations [are] the same.'" *M.R. v. Ridley Sch. Dist.*, 744 F.3d 112, 120 (3d Cir. 2014) (quoting *United States v. Athlone Indus., Inc.*, 746 F.2d 977, 984 (3d Cir. 1984)). In *Chasan II*, Plaintiffs' tortious interference claim was based on Defendants' alleged inducement of Hamilton to terminate his attorney-client relationship with Plaintiff Chasan and to not pay the fees requested. (*See Chasan II* Compl., ECF 12-12, at ¶¶ 253, 257) ("Defendants PBBPH law . . . intentionally interfered with Hamilton's performance of the contract by inducting or otherwise causing Hamilton to terminate Plaintiffs' representation . . . without any payment for Chasan's considerable legal work on behalf of Hamilton"). In the case

---

8     *See supra* discussion at pp. 12-14.

*sub judice*, Plaintiffs' tortious interference claim relates to the same contractual relationship between Plaintiff Chasan and Hamilton.  However, instead of only asserting Defendants' coercion of Hamilton, Plaintiffs also assert that Defendants lied about the legal malpractice lawsuit — deceitful conduct by Defendants that was not pled in either *Chasan I* or *Chasan II*.  Specifically, at Paragraph 390 of the complaint, Plaintiffs allege that "Pierce's email to Chasan on 4/30/2018 falsely stating that Hamilton had authorized an 8-figure malpractice case against Chasan was intended to intimidate Chasan and BJC Law from pursuing a civil action to recover attorney's fees for legal services on behalf of Hamilton." (*See* Compl., ECF 1, at ¶ 390).  At Paragraph 398, "Pierce intended Chasan to rely on his false threat of Hamilton's authorization of an 8-figure malpractice action, and Chasan justifiably relied on it, and was damaged because of it." (*Id.* at ¶ 398).  In essence Plaintiffs allege that Defendants *lied* when they represented that Hamilton authorized a legal malpractice action against Plaintiff Chasan, and that this lie induced Plaintiff Chasan to settle the attorney's fees and malpractice disputes. (*See* Compl., ECF 1, at ¶ 346).  Just as Judge Brody found in the *Chasan II* litigation, here, the claims also concern the transition in representation of Hamilton from Plaintiff Chasan to Defendants, and Plaintiff Chasan's attempt to recover fees.

While the conduct complained of here may not be exactly the same as those underlying the tortious interference claim in *Chasan II,* the similarity is sufficient to preclude the claim in this matter.  *A rose is a rose and by any other name remains a rose*.  As noted, in *Chasan II*, Plaintiffs alleged that Defendants coerced Hamilton to terminate Plaintiff Chasan as counsel and not pay his fees, whereas in the present action, Plaintiffs assert the same conduct — that Defendants coerced Hamilton to terminate Plaintiff Chasan as counsel and not pay his fees — and Plaintiffs further assert that Defendants *lied* regarding Hamilton's (non-existing) intention to file a legal malpractice lawsuit, a lie that apparently induced Plaintiff Chasan to give up his contractual rights with

Hamilton.  However, this conduct — whether the coercion or the lies — is directly related to the same attorney-client relationship between Plaintiff Chasan and Hamilton and the same alleged settlement agreement that does not exist.

Likewise, the material facts and evidence are similar in the two cases.  In *Chasan II*, the material facts relate to Hamilton's hiring of Defendants and firing of Plaintiffs, and the threatened legal malpractice lawsuit.  In this case, the material facts also relate to Hamilton's hiring of Defendants and firing of Plaintiffs, and the threatened legal malpractice lawsuit, *albeit* now including the allegation that the threatened legal malpractice lawsuit was never authorized by Hamilton and, therefore, the lawsuit threat was a lie.  Further, the witnesses needed to prove both cases are likely the same — Plaintiff Chasan, Hamilton, and Defendant Pierce.  Evaluating the two tortious interference claims, it is clear that Plaintiffs' tortious interference cause of action in this case is the same cause of action as the tortious interference claim in *Chasan II*, since it relies upon similar operative facts and witnesses.  Therefore, the tortious interference claim in this case is barred by *res judicata*.

Defendants also argue that Plaintiffs' tortious interference claim is barred by issue preclusion because the actual issue of claim preclusion was decided by Judge Brody in *Chasan II*.  *See Chasan II*, 2021 WL 148406, at *5 ("The claims in both *Chasan I* and [*Chasan II*] concern the transition in representation of Hamilton from Chasan to Pierce Bainbridge. . . . As a result, the claims for tortious interference and unjust enrichment are barred by res judicata.").

Issue preclusion prevents "a party from relitigating an issue actually decided in a prior case and necessary to the judgment."  *Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*, 590 U.S. ___, 140 S. Ct. 1589, 1594 (2020).  "There are four essential elements of issue preclusion: (1) an issue decided in a prior action is identical to the one presented in a later action; (2) the prior action resulted in a final judgment on the merits; (3) the party against whom issue preclusion is

17

asserted was a party to the prior action; and (4) the party against whom issue preclusion is asserted had a full and fair opportunity to litigate the issue in the prior action." *Flood v. Schaefer*, 754 F. App'x 130, 133 (3d Cir. 2018) (citing *Jones v. United Parcel Serv.*, 214 F.3d 402, 405 (3d Cir. 2000)).

Plaintiffs argue that the first prong is not met because the issue and claims are not the same due to the newly discovered evidence. As discussed above, this Court disagrees. In *Chasan II*, wherein Plaintiffs alleged that Defendants coerced Hamilton to terminated Plaintiff Chasan's professional services, Judge Brody decided that although the theory of recovery was different in *Chasan I*, the claims in *Chasan I* and *Chasan II* related to the same operative event and, thus, the tortious interference claim was barred by *res judicata*. *See Chasan II*, 2021 WL 148406 at *5-6. As such, the present issue, *i.e.*, *res judicata*, has already been decided in *Chasan II*, barring this Court from deciding the same issue.

In sum, Defendants have met their burden of showing the affirmative defenses of claim and issue preclusion apply to Count IV. Accordingly, Defendants' motion to dismiss Count IV is granted.

***Counts V-VIII – Fraud, Civil Conspiracy, and Concerted Action and Aiding and Abetting Fraud***

In the complaint, Plaintiffs also assert claims for fraud (Counts V and VI), civil conspiracy (Count VII), and concerted action and aiding and abetting fraud (Count VIII). Defendants argue that these claims are "clearly based on the same cause of action or the same nucleus of operative facts as *Chasan I* and *Chasan II*. That is, all of the claims arise from the parties' successive representations of Hamilton and Chasan's claim for fees in connection with Hamilton's suit . . . ." (Defs.' Mot., ECF 12-1, at p. 22). Plaintiffs disagree.

As explained, the doctrine of *res judicata* precludes a plaintiff from asserting a claim when there has been "(1) a final judgment on the merits in a prior suit involving (2) the same parties or

their privies and (3) a subsequent suit based on the same cause of action." *Duhaney*, 621 F.3d at 347. As concluded above, the first two requirements are met.[9] The parties dispute the third requirement, whether the allegations and cause of action in Counts V-VIII in this matter are the same causes of action asserted in *Chasan I* and *Chasan II*. When deciding *Chasan II*, Judge Brody explained that "when determining whether two cases involve the same cause of action for purposes of res judicata, courts take a 'broad view' and focus on the 'essential similarity of the underlying events giving rise to the various legal theories.'" *Chasan II*, 2021 WL 148406 at * 5 (citing *Davis v. Wells Fargo*, 824 F.3d 333, 342 (3d Cir. 2016)). "The claims in both *Chasan I* and [*Chasan II*] concern the transition in representation of Hamilton from Chasan to Pierce Bainbridge." *Id.* Applying this same rationale here, this Court also finds that the same transition in representation of Hamilton from Plaintiffs to Defendants, and the recovery of attorney's fees are also at issue here. Further, though the theories of recovery may be different — *i.e.*, breach of contract and tortious interference versus the same causes of action and fraud — this difference is not dispositive. Instead, "the focus is on the facts rather than legal theories." *Davis*, 824 F.3d at 342; *see also Elkadrawy v. Vanguard Grp., Inc.*, 584 F.3d 169, 173 (3d Cir. 2009) ("This analysis does not depend on the specific legal theory invoked, but rather the essential similarity of the underlying events giving rise to the various legal claims." (citation and internal quotation marks omitted)). Here, the same events — Hamilton's termination of Plaintiff Chasan's professional services and Defendants' failure to pay Plaintiffs their attorney's fees — give rise to the claims asserted in *Chasan I*, *Chasan II*, and *Chasan III* — the current action. As such, Plaintiffs' fraud-based claims are barred by the doctrine of *res judicata*. Accordingly, Defendants' motion to dismiss is granted as to Counts V-VIII of the complaint.

---

[9]     *See supra* discussion at pp. 12-14.

**CONCLUSION**

For the reasons set forth, Defendants' motion to dismiss is granted in its entirety. An Order consistent with this Memorandum Opinion follows.

*NITZA I. QUIÑONES ALEJANDRO*, J.